Filed April 26, 1892.

No. 15,599.

## HOUK ET AL. *v.* WALKER ET AL.

PARTNERSHIP.—*Partner's Interest.—Sale of.— Promissory Note.— Set-Off.—* Where one partner transfers all his right, title and interest in the assets of the firm, including the books and accounts of the partnership, to a continuing member of the firm, or another, and the outgoing member receives in payment of his interest the note of the purchaser, the maker of the note can not set off an account apparently due the firm from the member whose interest was transferred.

SAME.—A sale by one partner to a continuing member of the firm, or to another, in the absence of any special agreement to the contrary, carries with it the actual interest of such partner. The presumption is that the account of such partner with the firm was taken into account, and his interest in the partnership increased or diminished according to the state of his account, and that such selling partner, in the absence

of a special agreement to that effect, is not liable to account to the purchaser for any sum which may be due from him to the firm, and, *prima facie*, such transfer cancels his account, in so far at least as the purchasing partner is concerned.

From the Hamilton Circuit Court.

*G. Shirts* and *M. Vestal*, for appellants.

*T. J. Kane* and *T. P. Davis*, for appellees.

OLDS, J.—On and prior to March 30th, 1888, one James K. Bush and the appellant William P. Houk were partners and equal owners of the Ledger newspaper property, in Hamilton county, and the firm was indebted to various persons in a considerable sum. On said day the appellee James E. Walker purchased the interest of Houk in the partnership. The contract of sale was reduced to writing. The contract providing " that for and in consideration of the payments and agreements hereinafter stated, the said Houk hereby assigns and transfers to said Walker all his rights, title and interest in and to the partnership property of Bush & Houk, including the Ledger newspaper property. James E. Walker assumes and agrees to pay one-half of the firm indebtedness of Bush & Houk, that is, Walker takes the place of Houk in the firm of Bush & Houk, takes the assets, claims, etc., and pays the liabilities, which said indebtedness is as follows:" Then a statement of indebtedness to various parties is set out, amounting to some $1,200, and continuing, the contract states, " To which shall be added any other firm indebtedness that Bush may acknowledge as a proper liability of said firm, the railway passes held by Houk to be surrendered to Walker. The said Houk is to have and take Chambers' Encyclopædia when it comes to said firm, and a side-bar buggy, Hare make, and said Walker is to pay Houk $1,500, as follows: 1st. Cash, $400. 2d. Notes, Scott and Davenport, $350, aside from interest, and is to execute note due in one year, with approved surety, for balance, and said Walker also assumes and agrees to pay note to Puntenney for $1,050,.

and interest, and $500 on Stephenson mortgage referred to, being for unpaid purchase-money due from Houk."

At the date of the sale Walker executed his note, the one in suit, with appellee Theodore Johnson as surety, payable to Houk's order, in twelve months from date, for $400, with interest at 8 per cent. The note was not payable in bank.

It appears from the record that prior to the sale Houk had collected on claims due the firm some $600, and retained it. Appellant Houk endorsed the note sued upon to the appellant Wilson, who endorsed the same to appellee Miesse, who brought this action, making Walker, Johnson, Houk and Wilson parties defendant.

Several errors and cross-errors are assigned and discussed, but owing to the view we take of the case it only becomes necessary to pass upon one question, viz., the ruling of the court in overruling the demurrer of the appellee Miesse to the fourth paragraph of appellee Walker's answer.

This paragraph of answer seeks to plead an amount alleged to be $800 collected, received, retained and converted by Houk to his own use prior to the sale by him to Walker as a set-off against the note.

It is alleged in the answer that Bush and Houk were partners prior to March 30th, 1888, and that Houk had collected, retained and converted to his own use of the moneys of said firm $800. The answer alleges the purchase by Walker of Houk's interest in the partnership, and sets out a copy of the contract, and alleges that by such purchase Walker acquired all the rights of Houk and assumed all of his liabilities in said firm, and that the note in suit was executed for the amount due on the purchase ; that at the time Walker purchased said interest of Houk he had no knowledge that Houk had collected or retained any of the moneys of said firm, or that he was indebted to said firm, and the same was not taken into account in the liabilities assumed by him.

There are further allegations relative to $100 delinquent taxes which had accrued and had become a lien on the newspa-

per property prior to the purchase of the same by Bush and Houk, and which he was compelled to and did pay to protect the property. The answer is pleaded as a defence to the whole cause of action.

It is further alleged that on discovering the indebtedness of Houk to the firm, Bush, for a valuable consideration, assigned his interest therein to said Walker, and in assurance thereof has executed a written assignment of the same. A copy of a writing signed by Bush is filed with the paragraph of answer, stating that he had heretofore assigned and transferred all his rights and interest in the claim of Bush & Houk and Bush & Walker against Houk, and that the writing is executed " in assurance " of the transfer.

The paragraph of answer is radically defective. The written contract of sale, complete in itself, shows the sale to have been a sale and transfer of the interest of Houk in the partnership property, in consideration of certain amounts to be paid by Walker. As stated in the contract, Walker took the place of Houk in the firm of Bush & Houk, and took the assets and was to pay the liability. If each member of the firm of Bush & Houk paid into the firm an equal amount, and at the time of the sale Houk had drawn out more than Bush, such excess would not constitute a debt to the firm for which the firm could have sued Houk. He only became liable to account on final settlement for the excess received. The written contract only purports to sell and transfer the interest of Houk in the firm, whatever that interest may be. If he had drawn from the firm more in proportion to his interest than his co-partner, his interest in the firm would have been diminished to that extent. By the contract Houk does not transfer to Walker any cause of action or interest in a cause of action against himself. He transferred to Walker the interest he had in the firm at that time, whatever it may have been. If there was any fraud or mutual mistake by which Houk became liable to make good to

Walker or to the firm any amount he had drawn from the firm, such facts must be pleaded showing Houk's liability.

The averments of this paragraph of answer are to the effect that Houk had collected $800 of money due the firm and had retained it, whereby he became indebted to the firm in said sum. The collection and retention of $800 of money due the firm may or may not have made him liable to account to and pay over to this firm or to his co-partner on final settlement. If the firm was solvent and his partner had drawn an equal amount from the firm, he would in no way be liable to pay over any sum whatever to the firm or his co-partner, but could retain the money so collected by him. There is no averment in the fourth paragraph of answer as to the condition of the accounts of the partners, except that Houk had collected, retained and converted to his own use $800 of the moneys of said firm. For aught that appears, Bush may have collected, retained and converted to his own use a much larger sum, and there may have yet remained an ample amount of firm assets to have paid all existing liabilities of the firm. It certainly can not be true in law, or in good conscience, when a partnership, such as the one under consideration in this case, has been running for years and the partners have been from time to time collecting and using the money of the firm, and charging the same against the partner receiving it, that upon a sale by one partner of his interest in the partnership property, including the claims due the firm, the selling partner would become liable to account to and pay the succeeding firm the amount of money he had drawn during all the time he was a partner, even though the condition of his account with the firm was not known to the purchaser. It is the duty of the purchaser to ascertain the status of the accounts.

In many instances, if the business had been conducted for a number of years, the amount drawn by the partner prior to the sale would amount to a larger sum than the value of the partnership property.

Houk *et al. v.* Walker *et al.*

We regard it as a well-settled rule that a sale by one partner to a continuing member of the firm, or to another, in the absence of any special agreement to the contrary, carries with it the actual interest of such partner; that the presumption is, that the account of such partner with the firm was taken into account and his interest in the partnership increased or diminished according to the state of his account, and that such selling partner, in the absence of a special agreement to that effect, is not liable to account to the purchaser for any sum which may be due from him to the firm, and *prima facie* such transfer cancels his account, in so far at least as the purchasing partner is concerned.   See *Thompson* v. *Lowe*, 111 Ind. 272 (275), where the question is fully discussed.

The court erred in overruling the demurrer to the fourth paragraph of appellee Walker's answer.

The case was tried upon a wrong theory, the court having held that the appellee Walker's answer of set-off was good.   Houk then made application and asked to have the note allowed as exempt, also the money collected by him while a member of the firm of Bush & Houk allowed as a set-off.   These applications were denied.   These applications for exemption, and the rulings thereon, grew out of the erroneous ruling on the demurrer to the fourth paragraph of answer, and will probably not arise on a retrial.

In our opinion justice will be best subserved by setting aside the judgment as to all the parties, with directions to sustain the demurrer to the fourth paragraph of the answer of appellee Walker.

Judgment is reversed, at costs of appellee Walker, with instructions to set aside the judgment as to all of the parties, and to sustain the demurrer to the fourth paragraph of the answer of appellee Walker.

Filed April 20, 1892.