## James Pease

*v.*

## John Dawson.

*Opinion filed June 19, 1902.*

Partnership—*when one partner may treat transfer of interest as a dissolution.* If one partner transfers his interest in the firm upon consideration that the purchaser pay the seller's obligation to the firm, the other partner may insist upon payment of such obligation, and if not paid may treat the transfer as effecting a dissolution, and may sell the partnership property to pay the debts of the partnership and wind up the firm; and in such case a *bona fide* purchaser will take the property free from the claims of the other partner's creditors.

*Pease* v. *Dawson,* 97 Ill. App. 620, affirmed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. P. Vail, Judge, presiding.

Daniel McCaskill, for appellant.

Bulkley, Gray & More, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

This was replevin in the circuit court of Cook county by the appellee, against the appellant, to recover a stock of liquors, cigars and certain saloon fixtures. Among other pleas the appellant pleaded that in his official capacity as sheriff of said Cook county he held an execution in favor of one Patrick H. Early and against John Early and Algernon S. Osgood; that the stock of liquors and the saloon fixtures specified in the replevin writ were not the property of the plaintiff in replevin, but were the property of the defendants in the said execution, and that he levied upon and took possession of the same for the purpose of obtaining satisfaction of the execution. The appellee replied, averring that he, and not

the said defendants in the execution, was the owner of the chattels in controversy. Upon the verdict of the jury to whom the issues were submitted, judgment was entered in favor of the plaintiff in replevin, the appellee in this court. The Appellate Court for the First District affirmed the judgment. This appeal asks reversal of the judgment of affirmance on three grounds: First, that the trial court erred in refusing to grant the motion, entered by the appellant at the close of all the evidence, to direct a verdict in his favor; second, that the court erred in giving instructions Nos. 1, 2 and 3 in behalf of the appellee; third, in refusing instructions 3, 4, 5, 6 and 7 asked in behalf of appellant.

The tendencies of the proof were such that it was proper to submit the case to the jury. The appellee claimed title to the chattels in controversy by purchase from Algernon S. Osgood. Osgood and one John Early, brother of the plaintiff in the execution, in 1888 engaged, as co-partners, in the saloon business at 193 LaSalle street, in the city of Chicago. In the spring of 1895 John Early, one of the partners, executed a bill of sale for his interest in the partnership property to E. A. Dreifuss, who was then, and for some time previous had been, the bar-keeper for the firm. The only consideration paid by Dreifuss was his undertaking to assume and become liable for the "liabilities of John Early in the firm of Early & Osgood." Osgood contended that Early was indebted to the firm in the sum of $3200, and testified he refused to recognize Dreifuss as a partner unless he paid this liability of Early to the firm; that Dreifuss did not pay this amount or any other sum upon any liability of the firm; that Dreifuss said he would go to Louisville and raise the money, and if he did not get the money he would continue to work at $25 per week; that Dreifuss failed to raise the money and continued to serve as bar-keeper at the salary stated; that he, Osgood, took charge of the business and continued to manage it under the name and

style of A. S. Osgood & Co., though there was no person
represented by the word "Co." in the firm name; that
he had sole possession and control as the owner; that in
September, 1896, the sheriff of Cook county had placed
in his hands an execution issued on a judgment in favor
of the Schoenhofen Brewing Company and against the
said firm of Early & Osgood, and also a second execution
in favor of the said brewing company and against him-
self and his wife, and that the saloon was about to be
levied on to satisfy these executions; that thereupon he
sold the saloon stock and fixtures to the appellee for the
sum of $4000, with the knowledge of Dreifuss and with-
out any objection upon his part; that he made the bill
of sale and turned the keys over to appellee, Dawson, in
the presence of Dreifuss, and the money paid by appellee
was applied to the payment of the two executions and
to other obligations of the firm of Early & Osgood; that
appellee employed the witness to manage the saloon at
a salary of $40 per week and became responsible to Drei-
fuss for his salary of $25 per week as a bar-keeper, and
that he and Dreifuss remained in the employ of the ap-
pellee, in their respective positions, until the appellant,
as sheriff, levied upon the saloon stock and fixtures un-
der the execution on the judgment in favor of Patrick
H. Early and against Early & Osgood, on the 8th day of
December, 1896. The testimony of the appellee tended
to show that Osgood had possession and full control and
all *indicia* of ownership; that he believed Osgood to be
the owner, and bought in good faith and paid $4000 in
cash for the property.

Under the state of case which this testimony tended
to establish, Osgood had the right to regard and treat
the transfer of the interest of Early to Dreifuss as effect-
ing a dissolution of the co-partnership, (*Edens* v. *Williams*,
36 Ill. 252; *McCall* v. *Moss*, 112 id. 493; *Blake* v. *Sweeting*,
121 id. 67; 17 Am. & Eng. Ency. of Law,—1st ed.—1099;)
and as investing him with power to sell the partnership

effects to pay the debts of the partnership and wind up
the firm. (17 Am. & Eng. Ency. of Law,—1st ed.—1153.)
Furthermore, this evidence raised the question whether
Dreifuss had not, by allowing Osgood to control the prop-
erty as owner, and by standing by and allowing Os-
good to sell it to Dawson, become estopped to question
the title of Dawson. (11 Am. & Eng. Ency. of Law,—
2d ed.—429.) The court therefore properly declined to
direct a peremptory verdict for the appellant.

Instruction No. 1 granted at the request of the appel-
lee advised the jury that Dawson's purchase of the chat-
tels in suit should be sustained if the jury should find,
from the evidence, among other things, that the saloon
was operated by Osgood as owner thereof. The objec-
tion to this instruction is, that it was open to be given
the construction by the jury that the sale should be held
good if Osgood was operating the saloon as owner. We
do not think the instruction was at all liable to be so
misunderstood. It advised the jury as to the principles
of law which should be applied if the jury believed cer-
tain statements of facts therein recited had been proven.
The apparent ownership of Osgood, if proven, was among
the facts so recited in the instruction, but that feature
of the case was not unduly emphasized, nor could the
jury have understood the instruction to mean that that
fact was decisive, within itself, of the case.

The complaint as to the second and third instructions
given on behalf of the appellee is, that they proceed up-
on assumptions of fact as to the rights and interests of
Osgood in the property. We think the objection is not
good as to either of the instructions. Each of them ad-
vised the jury as to the law in the event the facts referred
to in the instructions should be proven by the evidence,
but did not interfere with the province of the jury to
determine what had been proven.

There is no good ground of objection to the fourth
instruction. It advised the jury correctly as to the *prima*

*facie* presumption of ownership which arises from the possession of personal property, and that the presumption was a rebuttable one. It did not authorize the jury to act upon the presumption alone, but only in view of all the evidence as to the real ownership of the property and the acts of the parties.

The instructions asked by the appellant and refused, if given, would not have instructed the jury as to any legal principle of which they were left unadvised by other instructions given in the same behalf.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*